# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY D. JOHNSON,<br><br>　　　　　Petitioner,<br><br>　vs.<br><br>JAMES HARTLEY,<br><br>　　　　　Respondent. | Case No.:1:12-cv-02008-LJO-SAB (HC)<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>(ECF No. 1) |

　　　　Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

　　　　Petitioner filed the instant petition for writ of habeas corpus on December 10, 2012. On September 1, 1991, Petitioner was convicted of aiding and abetting an attempted murder and was sentenced to seven years to life in prison.

　　　　On April 14, 2010, Petitioner appeared before the Board of Parole for his fourth subsequent parole consideration hearing.  He was found unsuitable for release and the next parole hearing was postponed for three years.

　　　　Petitioner filed a state habeas corpus petition in the Sacramento County Superior Court contending that he was denied equal protection and due process when the Board of Parole

1

Hearings denied his request to advance his next parole suitability hearing for failing to present new evidence in support of his request. The petition was denied in a reasoned decision on September 26, 2011.

Petitioner then filed a petition for writ of habeas corpus in the California Court of Appeal, Third Appellate District. The petition was summarily denied on December 15, 2011.

Petitioner subsequently filed a petition for writ of habeas corpus in the California Supreme Court. The petition was summarily denied on June 13, 2012.

In the instant petition, Petitioner contends his equal protection and due process rights were violated by the Board of Parole Hearings' summary denial of his request to advance a parole hearing date because contrary to the board's decision he submitted new evidence in support of his request. Petitioner also contends that the application of the Marsy's law to defer a subsequent parole hearing for three years violates the Ex Post Facto Clause. Petitioner further contends that his constitutional rights have been violated because his seven year to life sentence with the possibility of parole has been converted into a life sentence without the possibility of parole. After a thorough review of the instant petition, the Court finds it must be dismissed.

**DISCUSSION**

I.     Preliminary Review of Petition

Rule 4 of the Rules Governing § 2254 Cases requires the Court to make a preliminary review of each petition for writ of habeas corpus. The Court must dismiss a petition "[i]f it plainly appears from the face of the petition . . . that the petitioner is not entitled to relief." Rule 4 of the Rules Governing 2254 Cases; see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir. 1990). A petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted. Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

///

II.     Failure to State a Cognizable Claim for Relief

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).

A.     Denial of Request to Advance Parole Hearing Date

Petitioner contends that the board violated his right to due process by abusing its discretion when it denied his application to advance his parole hearing.  The state courts rejected this claim.

Petitioner fails to cite any federal law in support of his claim, let alone any clearly established Supreme Court precedent.  The Court finds that no such authority exists.  Although there are certain minimal procedural due process protections implicated by a board's decision to deny parole as set forth in the Supreme Court's decision in Swarthout v. Cooke, __ U.S. __, 131 S.Ct. 859 (2011), such decision does not apply to a board's decision not to advance a parole hearing.  Id. at 862-863 (in the state parole context due process requires only that the inmate be allowed to speak at the parole hearing, contest the evidence against him, advance notice of the hearing, and notification of the reasons parole was denied.).  Petitioner does not argue that he did not receive an opportunity to be heard or a statement of the reasons why his request to advance his next parole hearing was denied.  Rather, Petitioner challenges the board's finding that he failed to submit new evidence in support of his request contending it is false and meritless.  Because Petitioner received all the process for which he is constitutionally entitled, there is no merit to this claim.

B.      Application of Marsy's Law-Ex Post Facto Clause

Marsy's law increased the minimum parole hearing deferral period from one year to three years, the maximum deferral period from five years to fifteen years, and the default deferral period from one year to fifteen years. Cal. Penal Code § 3041.5; Gilman v. Schwarzenegger, 638 F.3d 1101, 1104 (9th Cir. 2011).

The Ex Post Facto Clause of the United States Constitution prohibits the states from passing any "ex post facto law," a prohibition that "is aimed at laws 'that retroactively alter the definition of crimes or increase the punishment for criminal acts.'" Cal. Dept. of Corrections v. Morales, 514 U.S. 499, 504 (1995); see also Weaver v. Graham, 450 U.S. 24, 28 (1981) (providing that "[t]he ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'"). The United States Supreme Court has held that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." Garner v. Jones, 529 U.S. 244, 250 (2000).

On November 4, 2008, California voters passed Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," which, inter alia, altered the frequency of parole hearings for prisoners not found suitable for parole. Cal. Penal Code § 3041.5; Cal. Const., art. I, § 28. Prior to the passage of Proposition 9, if a prisoner was determined unsuitable for parole, a subsequent parole hearing would be held annually thereafter. Cal Penal Code § 3041.5(b)(2) (2008). If the parole board determined it was not reasonable to expect parole would be granted within the next year, it could defer rehearing for two years. Id. If the prisoner was convicted of murder and it was not reasonable to expect he/she would be granted parole within the year, the board could select a rehearing term of up to five years. Id. Proposition 9 changed the frequency of subsequent parole hearings as follows:

> The board shall schedule the next hearing, after considering the views and interests of the victim, as follows:

   (A) Fifteen years after any hearing at which parole is denied, unless the board finds by clear enumerated in subdivision (a) of Section 3041 are such that consideration of the public and victim's safety does not require a more lengthy period of incarceration for the prisoner than 10 additional years.

   (B) Ten years after any hearing at which parole is denied, unless the board finds by clear and convincing evidence that . . . consideration of the public and victim's safety does not require a more lengthy period of incarceration for the prisoner than seven additional years.

   (C) Three years, five years, or seven years after any hearing at which parole is denied, because . . . consideration of the public and victim's safety requires a more lengthy period of incarceration for the prisoner, but does not require a more lengthy period of incarceration for the prisoner and convincing evidence that the criteria relevant to the setting of parole release dates than seven additional years.

Cal. Penal Code § 3041.5(b)(3).

  Petitioner claims an ex post facto violation occurred when Marsy's Law was applied to him retroactively because he was denied future parole consideration for a period of three years. The Court does not find an ex post facto violation.

  In <u>Morales</u>, a California statute changed the frequency of reconsideration hearings for parole from every year to up to three years for prisoners convicted of more than one murder. 514 U.S. at 503.  The Supreme Court determined the statute did not violate ex post facto because the retroactive application of the change in California law did not create "'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" <u>Garner v. Jones</u>, 529 U.S. 244, 250 (2000) (quoting, <u>Morales</u>, 514 U.S. at 509.)  The Supreme Court noted that the law "did not modify the statutory punishment for any particular offenses," it did not "alter the standards for determining either the initial date of parole eligibility or an inmate's suitability for parole," and it "did not change the basic structure of California's parole law." <u>Garner</u>, 529 U.S. at 250 (citing, <u>Morales</u>, 514 U.S. at 507).  Likewise, in this case Proposition 9 did not modify the punishment for Petitioner's offense of attempted murder, it did not alter his initial parole eligibility date, and it did not change the basic structure of California's parole law.  The board

must consider the same factors in determining parole suitability as before.  See Cal. Penal Code 3041(b); Cal. Code Regs., tit. 15, § 2402(b).

Nevertheless as noted above, in Garner the Supreme Court found that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." 529 U.S. at 250.  In Garner, the Supreme Court determined that an amendment to Georgia's parole law did not violate ex post facto even where the frequency of reconsideration hearings was changed from every three years to every eight years. Id. at 256.  The Court held that it could not conclude that the change in Georgia law lengthened the prisoner's time of actual imprisonment because Georgia law vested broad discretion with the parole board to set a prisoner's date of rehearing.  Id. at 254-56.  In addition, the Court found it significant that the parole board's own policies permitted "expedited parole reviews in the event of a change in [a prisoner's] circumstance or where the Board receives new information that would warrant a sooner review." Id. at 254 [Citation.].

Here, the California parole board is still vested with broad discretion in selecting a date of rehearing from three years to 15 years.  While it is true that Petitioner is no longer eligible for parole review as previously determined under California law, the board retains the discretion, as did the Georgia parole board in Garner, to advance a hearing at any time should there be a change in circumstances.  Pursuant to Cal. Penal Code § 3041.5(b)(4), the board may in its discretion, after considering the views and interests of the victim, advance a hearing set pursuant to paragraph (3) to an earlier date, when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner provided in paragraph (3).  The fact that the board declined to advance a hearing date in this instance because there was no evidence to support such request does not demonstrate a due process violation as Petitioner received all the process for which he was constitutionally entitled.

Based on the Supreme Court's holding in Garner, this Court does not find, and Petitioner has not demonstrated, that Proposition 9 creates more than just a "speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes." Garner, 529 U.S. at 251 (quoting, Morales, 514 U.S. at 509).  Accordingly, Petitioner's challenge to the board's application of Marsy's Law in his case must fail.

Furthermore, Petitioner's challenge to the application of Marsy's law appears clearly protected as a class member in the Gilman case pending in this Court.  See Gilman v. Fisher, 2:05-cv-00830-LKK-GGH.  The Gilman case involves a civil rights complaint filed pursuant to 28 U.S.C. § 1983 in which the plaintiffs allege that Marsy's Law violates the Ex Post Facto Clause because, when applied retroactively, it creates a risk of increasing the length of their punishment.  The Gilman class consists of California state prisoners who have been sentenced to a term that includes life with the possibility of parole, are eligible for parole, and have been denied parole on one or more occasions.  Id., ECF. No. 182.  Petitioner, who has been sentenced to a term of life with the possibility of parole and denied parole on multiple occasions, is within the realm of the Gilman class.

   C.  Constitutional Challenge to Length of Sentence

Petitioner contends that the board and state courts have converted his seven years to life sentence with the possibility of parole into a life sentence without the possibility of parole because he has served well beyond the matrix of base terms set forth in the California Code of Regulations and principles of proportionality or uniformity.  A life prisoner's minimum eligibility parole date (MEPD) is the "earliest date on which a … life prisoner may be legally released on parole." See Cal. Code Regs., tit. 15, § 3000.  The California Department of Corrections and Rehabilitation determines the MEPD.  Cal. Code Regs., tit. 15, § 2400. Conversely, "[t]he length of time a prisoner must serve prior to actual release on parole is determined by the board." Id.

California law provides that, one year prior to a prisoner's MEPD, the Board of Parole Hearings panel shall meet with the prisoner and shall set a release date "unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 30451(a). Thus, the prisoner's MEPD is the basis for the timing of the initial suitability hearing.

The board is not required to consider the matrix, or principles of proportionality or uniformity, until after the board deems an inmate suitable for parole. See Cal. Code Regs., tit. 15, § 2403; In re Dannenberg, 34 Cal.4th 1061, 1091-1094 (2005), abrogated in part, In re Lawrence, 44 Cal.4th 1181, 1205-1206 (2008). Under California law, Petitioner will be released on parole when the board determines that he is suitable for parole because he is no longer an unreasonable risk to the public. In re Lawrence, 44 Cal.4th at 1205-1206. Therefore, Petitioner's due process rights were not violated because he was not released from prison on or about his MEPD or in accordance with the applicable matrix as he has not yet been found suitable for release.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be dismissed; and
2. The Clerk of Court be directed to terminate this action.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to

Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated: **February 4, 2013**           /s/ **Stanley A. Boone**
                                                           UNITED STATES MAGISTRATE JUDGE